## UNIVERSITY OF VERMONT AND STATE AGRICULTURAL COLLEGE *v.* CHESTER BAXTER'S ESTATE.

*Pleading. Chose in Action. Assignment. Statute. (Acts of 1865, p. 96.)*

A special plea setting up in defense that the note and subscription declared upon in the declaration were proposed gratuities, and were given without consideration, amounts to the general issue, and for this reason is bad on special demurrer. By the union of the University of Vermont and the Vermont Agricultural College under the act of the Legislature approved November 9, 1865, (Session Laws, 1865, 96), which were, previous to the union, independent corporations, a new corporation was thereby created under the name of the "University of Vermont and State Agricultural College," and the property, in its most extensive sense, of the University passed to and vested in the new corporation.

The act in terms gives the right to the new corporation to maintain actions in its own name in relation to the real property vested in it by the union, and is silent as to the right to sue upon choses in action; but though silent in this respect, it transfers them to the new corporation and substitutes it for the original party without prejudice to the other party to the claim transferred, and this passes the right to the new corporation to sue in its own name upon such claims.

But in an action by the new corporation to recover upon a *chose* in action existing originally in favor of the University of Vermont, the organization of the plaintiffs is material, as well as a vote by the University to accept the act and to surrender and relinquish its property to the plaintiffs, and these facts should be averred in the declaration.

Difference in effect between the transfer or assignment of a claim or chose in action by an individual, and by the crown or act of the legislature.

ASSUMPSIT, in four counts. Pleas, the general issue, the statute of limitations, and four other special pleas in bar. · To the third, fourth, fifth and sixth pleas in bar the plaintiffs demurred specially. The court at the May term, 1868, BARRETT, J., presiding, *pro forma*, adjudged the pleas sufficient, and rendered judgment for the defendant, to which the plaintiffs excepted. The substance of the pleadings and the material facts in the case are sufficiently stated in the opinion of the court.

*Washburn & Marsh* for the plaintiffs.

The two promissory notes declared upon, acknowledge upon their face a consideration, and the subscription counted upon, having been accepted and acted upon, became also a contract based upon a sufficient consideration. *Patchin* v. *Swift et al.*, 21

Vt., 292 ; *Vt. Central R. R. Co.* v. *Clayes*, 21 Vt., 34 ; *Univ. of Vt.* v. *Buell*, 2 Vt., 47 ; *State Treasurer* v. *Cross et al.*, 9 Vt., 289 ; *Troy Academy* v. *Nelson*, 24 Vt., 189 ; *Amherst Academy* v. *Cowls*, 6 Pick., 427 ; *Dartmouth College* v. *Woodward*, 4 U. S. Cond., 547.

The defense set up by each of the pleas, to which a demurrer has been filed, is, that there was no consideration for the contracts declared upon in the particular counts, to which the several pleas apply. The pleas are therefore bad, as amounting to the general issue. *Potter* v. *Stanley*, 1 D. Chip., 243 ; *Hatch* v. *Hyde et al.*, 14 Vt., 25 ; Steph. Pl., 418 ; Gould's Pl., 346.

The pleas are bad in substance, as well as form. They each aver, that the indebtedness counted upon was a proposed gratuity, "without any consideration paid, or agreed to be paid," by the University. It is not essential to a good consideration that any thing should be paid, or be agreed to be paid, to the promissor. The acceptance of the promissory notes in payment of a previous subscription, and the acceptance of the subscription declared upon, imposed an obligation upon the University to apply the funds, in good faith, for the promotion of the educational interests of the state, and this is a sufficient consideration to uphold the contracts. *Amherst Academy* v. *Cowls*, 6 Pick., 427 ; *Dartmouth College* v. *Woodward*, 4 U. S. Cond., 547.

But it was objected in the county court, and upon that objection the case was decided, that the present plaintiffs could not enforce a claim upon a contract made with the University of Vermont.

By the fourth section of the act incorporating the plaintiffs, by uniting the University of Vermont and the Vermont Agricultural College, (acts of 1865, p. 96,) the right "to use, control, sell, or dispose of all the real estate and personal property of the University of Vermont" was given to the plaintiffs, and the liability "to assume, discharge and perform all the debts, duties, trusts and obligations," to which the University of Vermont was subject, was imposed upon the plaintiffs. This section, and the vote provided for by section twelve, operated as a complete assignment to the plaintiffs of the debts declared upon. *Amherst Academy* v. *Cowls*, 6 Pick., 427 ; *Sherman, admr.,* v. *Estate of Dodge*, 28 Vt., 26.

The plaintiffs, therefore, at the time they presented their claims before the commissioners, were the holders and absolute owners of the claims, and stood in the position and with the rights of the assignee of a chose in action not negotiable.

And the question arises, whether the rule, that such assignee can only sustain an action at law in the name of the assignor, applies to the presentation of such claims for allowance by the commissioners upon the estate of the debtor,—in other words, whether such assignee must present such claim in the name of the assignor, or in his own name. Gen. Sts., 400, § § 1, 6, 7, 8, 14; Acts of 1865, p. 96, § 11; 31 Vt., 673; 1 Vt., 57; 12 Vt., 358; 14 Vt., 450; 31 Vt., 473; 32 Vt., 802; 22 Vt., 50.

*W. C. French*, for the defendant.

The gist of the pleas is the insolvency of Mr. Baxter at the time of subscription, and his continued insolvency; not wholly the want of consideration, which is alleged as inducement to the other allegations.

If the matter pleaded amounts to a defense, it is a special defense and can and should be pleaded specially.

We insist that the matter pleaded amounts to a good, defense. A proposed gift by subscription should not stand upon better grounds than a perfected gift by delivery, or deed, which, it is well settled, is not good as against creditors then existing. 2 Kent's Com., 440, *et seq.*, and cases cited. *Reade* v. *Livingston*, 3 John's ch. 481, 500 ; *Jackson* v. *Seward*, 5 Cowen 67 ; *Sexton* v. *Wheaton*, 8 Wheat., 229. The executor so far represents the creditors, that he has the right to make this defense in their behalf.

The demurrer strikes back to the first fault in substance in the pleadings. 1 Chitty's Pl., 706. The plaintiffs can not sustain this suit. The several counts are each upon alleged promises to the " Corporation of the University of Vermont," and no allegation is made or reason shown, why the action is brought in the name of the plaintiffs,—another and entirely different corporation. This objection alone is fatal to the present suit.

Under no form of allegation can this suit be sustained in favor of the present plaintiffs. The Agricultural College was incorpo-

rated by an act approved November 22, 1864. This corporation, was united with the University of Vermont, by an act approved November 9, 1865. The act of union provides (sec. 4) "that suits may be brought in the name of each corporation interested, or in the name of the new corporation, to recover any lands or rents due from lands, belonging to either," but does not provide for any other suits in the name of the new corporation, to enforce any existing rights or liabilities to either. The silence of the act of union in respect to other rights, belonging to either corporation, clearly shows that it was the intention of the legislature to leave each corporation to enforce their other rights, claims and demands, in their own names. If the effect of the act of union was to annul the separate charters of each corporation, which we assert it was not, (*vide* sec. 11,) still each corporation would remain in existence for the term of three years "for the purpose of prosecuting and defending suits," etc. Gen. Sts., p. 545, § 14. And by the act of 1867, p. 88, "until such suits and the subject matter thereof shall be finally disposed of."

There is no evidence that the act of union ever took effect by the votes of the two corporations, as required by section twelve of the act.


The opinion of the court was delivered by

PROUT, J. The plaintiffs, in the two first counts of their declaration, declare upon promissory notes made payable to the University of Vermont; in the third, upon an indebtedness and promise to that corporation, and in the fourth count, upon a subscription payable to the same party. The action is in the name of the University of Vermont and State Agricultural College, the University of Vermont having been united to the plaintiff institution. To the declaration the defendant has pleaded four special pleas, to which the plaintiffs have demurred generally and specially, assigning for cause of demurrer that they amount to the general issue, and which, if objectionable for that cause, is ill pleading. The defence set up in the special pleas is, that the notes and subscription were proposed gratuities on the part of Mr. Baxter, and were given without consideration. Other mat-

ters of fact are alleged and set forth in them, as prior indebtedness and inability on the part of Baxter to pay his debts, which we deem unimportant in determining their nature and effect. A special plea is only admissible for the purpose of bringing forward new matter which does not deny or put in issue the truth of the declaration. This is the general rule, and the reason is, to prevent unnecessary prolixity, and a reference to the court, " instead of the jury, of matters of fact—matter which goes in denial of the declaration and not in avoidance of it." Gould's Pl., 346, § 79. The cases of *Potter* v. *Stanley*, 1 D. Chip., 243, and *Hatch* v. *Hyde*, 14 Vt., 25, are direct authorities upon the point. In the latter case, it is said, a plea denying the consideration amounts to the general issue, and is bad on special demurrer. The pleas in this case are bad for the same reason.

The demurrer, however, raises the question as to the sufficiency of the declaration. The several counts contained in it, as already remarked, allege an indebtedness and promise to the University of Vermont, which is a different party than the plaintiffs, and it is claimed that under no allegation of facts can the plaintiffs recover in their name. The legislature of this state, in October, 1864, (Session Laws, 1864, p. 101,) passed an act incorporating the Vermont Agricultural College. The institution, when organized according to the provisions of its charter, possessed all the powers of an independent corporate body. Subsequently, by virtue of the provisions of an act approved November 9, 1865, (Session Laws, 1865, p. 96,) they became united with the University of Vermont, which provides that when the several institutions shall have become united as therein provided, they shall be a body corporate, of the name of the plaintiffs, for the purpose of carrying out the objects contemplated by their respective charters. Sections four and twelve of this act contain all that is material relating to the property and assets belonging to either institution. By the provisions of those sections, the trustees of the united colleges are given full authority to use, control, sell or dispose of all the real and personal property of the University of Vermont for the benefit of the new institution, in case they became united as provided, and are required to assume and pay all the debts and

perform all the duties and trusts which the several institutions were subject to at the time they became merged in said new institution. The new institution may also, by the provisions of the act, acquire other property by gift, grant or otherwise, from other sources, to enable them to attain the object intended, and which the legislature had in view, by uniting, closely and completely, the two colleges, and by transferring the property and means of both to the plaintiffs. This transfer of the property is, it is to be noticed, by operation of express law, except as dependent upon an organization under the act, and certain votes as therein provided. If both institutions voted to accept the act, organized, and also voted to surrender and relinquish to the plaintiffs, the new corporation thereby created, " all the property belonging to them, real and personal, and all the profits, rents and income therefrom," as provided, and the two institutions were thus brought together and united, the *property*, in its most extensive sense, of the University, passed to and vested in the plaintiffs. This is the plain effect of the act—its policy and spirit, as indicated by its language and object. In relation to the real property, no question is made as to the plaintiffs' right of action, which is in terms given them, and they may maintain it in their own name. As to choses in action, claims of the character of those in controversy, if depending wholly upon the *language* of the act, it may be more doubtful. However that may be, in our view, the question does not depend upon a construction of its language merely, but rather upon the language and the character and nature of the transfer : whether it is the act of the law; which, although silent as to the right to sue, not only transfers, but substitutes the plaintiffs for the original party to these contract claims, and which are the subject of the action. In the case of the *King* v. *Twine et al.*, 2 Cro. Jac., 179, it is held that the king's grant or assignment of a chose in action is " good enough," and that the grantee or assignee may have the benefit of it, by an action in his own name. This is not so as to a *common* person, as said in that case, and as has been since repeatedly held; but a transfer or assignment of a claim or cause of action, whether negotiable or not, made by the crown, takes effect, it is said in *Lambert* v. *Taylor et al.*, 4 B. & C., 138, (10

E. C. L., 515,) " from a general rule of law ; not from the custom of merchants, or any special custom," and passes the right to sue. So of an act of the legislature, transferring a *cause* of action, as is not unfrequent under the operation of bankrupt and insolvent laws, which pass and vest the legal title and interest to assignees, as well as the right of action ; and they may maintain it in their name. 2 Bl. Com., 442, 485. We the more readily come to this conclusion in this case, as the defendant can not be prejudiced, all other defenses being saved to him by the terms of the act referred to. And where he can not be prejudiced upon common principle, as remarked by the court in *Maynard et al.* v. *Briggs*, 26 Vt., 94, " the suit may always be brought either in the name of the parties with whom the contract is made, or in the name of those legally interested, at the election of the plaintiff." But an organization of the plaintiffs is material, as well as a vote to accept the act and to surrender and relinquish the *property* of the University to the plaintiffs, and these facts should be averred in the declaration, upon the same principle that it is necessary to allege the purchase and delivery of a non-negotiable note, or other debt, and an express promise to pay it, to enable the purchaser or assignee in that case to maintain an action in his name to recover it. It is not enough that the plaintiffs are the owners of these claims, that they are their property, and that as creditors they presented them to the commissioners on Mr. Baxter's estate for allowance. That would lead to confusion and possibly embarrassment in respect to offsets, for which there is no necessity, as the plaintiffs' legal title and interest may be set forth by averment and proved on trial, or the claim may be prosecuted in the name of the original party by the real owner, as is often done on well understood principles.

The declaration is therefore bad, but as the plaintiffs desire, the judgment of the county court is *pro forma* reversed, with liberty to amend on the usual terms.